UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                             PLAINTIFF

v.                                    No. 2:21-CV-02052

$510,000 UNITED STATES CURRENCY                                      DEFENDANT

v.

OLUWASESAN ABIDAKUN OJO                                              CLAIMANT

## OPINION AND ORDER

Before the Court is Claimant's motion (Doc. 16) for summary judgment, brief in support (Doc. 17), and statement of facts (Doc. 18).  Plaintiff filed a response (Doc. 21) and response to the statement of facts (Doc. 22).  Claimant filed a reply (Doc. 25).  The motion for summary judgment will be denied.

I.      **Background**

Claimant Ojo operated an export business, Triosets Services, which exported used cars from the United States to sell in Nigeria.  When a vehicle was purchased in Nigeria, the buyer paid by depositing Naira, the Nigerian currency, in Claimant's United Bank of Africa bank account.  Claimant then sought out people wanting to exchange United States currency for Naira.  Claimant told investigators he "told some of the people that if anybody need Naira, [he] can give them Naira for them to give [him] dollars . . . like a form of Western Union by a loan.  You know, a loan register as Western Union."  (Doc. 22-1, p. 6 (internally numbered as 18:7-11)).  Claimant exchanged these "customers" U.S. currency for Naira and occasionally charged an exchange rate to make a profit.  Claimant's text messages indicate that on at least two prior occasions Claimant received U.S. currency from people and in exchange deposited Naira in their accounts.  Triosets

1

Services was not a Financial Crimes Enforcement Network ("FinCen") registered money transmitting business.

In July 2020, Claimant engaged in another one of these transactions when he traveled to Los Angeles, California to meet with an unidentified individual and obtain $510,000 in U.S. currency, the Defendant Currency in this case.  According to Claimant, he had already provided this unknown individual with around 200 million Naira in exchange for the Defendant Currency. Claimant received the Defendant Currency in cash, bundled in rubber bands, placed this money on the floor of his rented van for safe keeping, and began driving back to his home state of Maryland. While traveling through the Western District of Arkansas, Claimant was stopped by an Arkansas State Trooper for alleged traffic violations.  During the traffic stop, the state trooper instructed Claimant to exit the van and questioned Claimant about the various details of Claimant's travels. Claimant informed the trooper that he had between $400,000 and $500,000 in his vehicle but stated he did not know much about the money.  Two additional state troopers arrived at the traffic stop, and Claimant's van was eventually searched.  Based on Claimant's statements about the money, the state trooper took Claimant in for questioning by a DEA agent.  Claimant, after being Mirandized by DEA Agents, explained to DEA agents how he had obtained the money, his plan to exchange Naira for U.S. currency, and explained his exchange process.  The $510,000 found in Claimant's van was seized by the United States.

On March 5, 2021, Plaintiff filed a complaint for forfeiture *in rem* against the Defendant Currency alleging that the money was involved in violations of 18 U.S.C § 1960.  On March 12, 2021, Claimant filed a verified claim of interest (Doc. 7) claiming that the money was obtained lawfully and as such should be returned to Claimant.  Claimant maintains this position and filed the instant motion for summary judgment on these grounds.

## II.    Summary Judgment Standard

On a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party, grants all reasonable factual inferences in the nonmovant's favor, and only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). Once the movant has met its burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order for there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248).

## III.    Analysis

18 U.S.C. § 1960 prohibits the operation of an unlicensed money transmitting business and provides that

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

(A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

(B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or

(C) otherwise involves the transportation or transmission of funds that are

3

> known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;

(2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier . . . .

31 U.S.C. § 5330 requires that a money transmitting business be registered with the Secretary of the Treasury and defines "money transmitting business" as

> any business other than the United States Postal Service which—
>
> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of currency, funds, or value that substitutes for currency, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;
>
> (B) is required to file reports under section 5313; and
>
> (C) is not a depository institution (as defined in section 5313(g)).

18 U.S.C. § 981(a)(1)(A) provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section . . . 1960 of this title, or any property traceable to such property" is subject to forfeiture to the United States.  The Government bears the initial burden of establishing forfeitability by a preponderance of the evidence and must establish a substantial connection between the property and the crime.  § 981(c).

It is undisputed that the Defendant Currency was exchanged for around 200 million Naira and thus was involved in a currency exchange governed by 31 U.S.C. § 5330.  It is also undisputed that Claimant did not operate a registered money transmitting business.  However, Claimant argues he was not operating any type of business that would meet the definition of "unlicensed money transmitting business" pursuant to 18 U.S.C. § 1960.  Questions of fact exist as to whether

4

Claimant operated an unlicensed money transmitting business and whether the Defendant Currency was transmitted through such business in violation of 18 U.S.C. § 1960.

Claimant relies on Second Circuit precedent holding that one isolated transmission of money does not constitute a money transmitting business as defined by 18 U.S.C § 1960.  *United States v. Banki*, 685 F.3d 99, 113-14 (2d Cir. 2012); *United States v. Velastegui*, 199 F.3d 590, 595 n.4 (2d Cir.1999)).  The Court will not address the reliance on out-of-circuit precedent because Claimant's own statements to investigators—including the statement in which he compared himself to the popular money transfer service Western Union—supported by text messages found on his phone, create a genuine issue of material fact as to whether Claimant provided an exchange service and exchanged Naira for U.S. Currency on multiple occasions for the benefit of himself and other persons.

In the alternative, Claimant states that under applicable Treasury Department regulations, a person who "[a]ccepts and transmits funds only integral to the sale of goods or the provision of services, other than money transmission services, by the person who is accepting and transmitting the funds" is not a money transmitter, and therefore does not violate of 18 U.S.C. § 1960.  31 C.F.R. § 1010.100(ff)(5)(ii)(F).  The Claimant argues that this regulation describes his business of buying vehicles in the United States to be exported to and sold in Nigeria for Naira.  The Court finds a question of fact exists regarding Claimant's business because a reasonable fact finder could find Claimant's purported exchanges of Naira for U.S. currency were entirely separate transactions which were not *integral* to the sale of vehicles in Nigeria, especially in light of the fact that Claimant admitted to occasionally taking advantage of the exchange rate between U.S. currency and Naira to make a profit.  (Doc. 22-1, p. 6 (internally numbered at 18:13-20:6)); *see also United States v. $215,587.22 in U.S. Currency Seized from Bank Acct. No. 100606401387436 held in the*

*Name of JJ Szlavik Cos., Inc. at Citizens Bank*, 306 F. Supp. 3d 213, 220 (D.D.C. 2018).  Because genuine issues of material facts exist, Claimant's motion for summary judgment will be denied.

**IV.**     **Conclusion**

IT IS THEREFORE ORDERED that Claimant's motion (Doc. 16) for summary judgment is DENIED.

IT IS SO ORDERED this 3rd day of March, 2022.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE